UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LOREN C. B.,[1]

        Plaintiff,

   v.                              Civil Action 2:25-cv-1084
                                      Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff, Loren C. B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his SSI application in February 2023 alleging that he became disabled beginning December 1, 2019. (R. at 185–91.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a hearing on August 8, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 36–61.)

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

A vocational expert ("VE") also appeared and testified. On August 18, 2024, the ALJ issued an unfavorable determination, which became final on July 18, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 7–28, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ's residual functional capacity ("RFC")[2] determination is not supported by substantial evidence because the ALJ erred when evaluating medical opinion evidence and performing a subjective symptom assessment (*fka*, a credibility determination). (Pl.'s Statement of Errors 2–3, ECF No. 8.) The Court finds that Plaintiff's contentions of error lack merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on August 18, 2024. (R. at 7–28.) The ALJ initially determined that Plaintiff met the insured status requirements on March 31, 2024.

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

(*Id*. at 12.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not

engaged in substantial gainful activity from his alleged onset date of December 1, 2019 through

his date last insured. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe

medically determinable impairments: schizoaffective disorder; bipolar disorder; depressive

disorder; hypertension; lumbar degenerative disc disease; and thoracic and lumbar Schmorl's

nodes. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 13.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the residual functional capacity to perform
> medium work as defined in 20 CFR 404.1567(c) except frequently climb ramps and
> stairs; occasionally climb ladders, ropes, or scaffolds; limited to work that is not at

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the
> criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
> C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his
> or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual
> functional capacity, can the claimant perform other work available in the national
> economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir.
2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

a production rate pace, such as one has with assembly line work; can tolerate occasional changes in duties and the work setting. (*sic*)

(*Id*. at 17.) At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 22.) The ALJ then relied on the VE's testimony at step five to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of hospital cleaner, janitor, and packager. (*Id*. at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*.)

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

4

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### IV.     ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error when evaluating medical opinion evidence and assessing Plaintiff's subjective symptoms. (Pl.'s Statement of Errors 2–3, ECF No. 8.) The Court considers each contention in turn and finds that neither has merit.

### A.     Medical Opinion Evidence

Plaintiff first contends that the ALJ reversibly erred when he evaluated a medical opinion from consultative examiner, Dr. Barner. (*Id.* at 3.) Specifically, Plaintiff contends that although the ALJ found Dr. Barner's opinion persuasive, he failed to include Dr. Barner's adaptation limits in Plaintiff's RFC. (*Id.*) This contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

---

[4] Because Plaintiff's application was filed in 2023, it is subject to regulations governing applications filed after March 27, 2017.

findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

Here, the ALJ accurately summarized Dr. Barner 's opinions, writing as follows:

A psychological consultative examination was completed in August 2023 by Psychologist JeAndra Barner, PhD, who opined the claimant should be able to understand, remember and carry out instructions without difficulty. However, that would depend on his ability to remain compliant with his psychotropic medication. It was noted his depression is a factor in his successful employment. It appears he has the ability to maintain attention and concentration for a period of time but can quickly become unmotivated and disinterested in putting forth energy needed to maintain successful employment. He would have difficulty carrying out tasks that require him to maintain persistence and pace for long periods of time. He reported getting along with his coworkers and with his supervisor. He was polite during the

6

> interview process and attempted social conformity during the interview. He should be able to respond appropriately to both coworkers and to supervision. *This claimant's mental ability to withstand the stresses and pressures associated with day-to-day work activities is assessed as having impairment. Given this claimant's mental state he may have difficulties adjusting and coping with the pressures of a normal work setting over long periods of time.* (Exhibit 7F).

(R. at 21) (emphasis added). The ALJ then determined that Dr. Barner's opinion was "persuasive as it is consistent with and supported by the medical evidence of record." (*Id.*)

The Court finds no error. Although concise, the ALJ explicitly referred to the consistency and supportability factors. And notably, Plaintiff does not contend that the ALJ committed an articulation error.

Instead, Plaintiff contends that the ALJ erred by failing to incorporate Dr. Barner's adaptation-related limits in Plaintiff's RFC. But the Court finds that those limits lacked the requisite specificity. Dr. Barner opined that Plaintiff's ability to withstand the work stress was "assessed as having impairment," and that "he *may* have difficulties" adjusting and coping with workplace pressures over long periods. (*Id.* at 661) (emphasis added). Equivocal statements such as these are speculative, and thus, they do not constitute functional limits that an ALJ is required to consider for inclusion in an RFC. *See Christina L. v. Comm'r of Soc. Sec.*, No. 2:24-CV1156, 2024 WL 4833794, at *8–9 (S.D. Ohio Nov. 20, 2024) (citing *Earley v. Comm'r of Soc. Sec.*, No. 2:19-CV-53, 2020 WL 1080417, at *4 (S.D. Ohio Mar. 6, 2020) (explaining that "[a]n ALJ commits no error when disregarding speculative or ambiguous limitations that do not definitively mandate that a claimant cannot perform a specific task or operate in a particular manner")). *See also Graham v. Comm'r of Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, inter alia, the at-issue limitations "were not definitive as they indicated that Plaintiff 'may require some repetition' as to instructions and 'may' need

7

assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at \*9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the possible limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.")).

Even if Dr. Barner's equivocal statements constituted functional limits, the ALJ nonetheless accounted for them by limiting Plaintiff to "occasional changes in duties and the work setting" and "work that is not at a production rate pace, such as . . . assembly line work." (R. at 17.) Plaintiff apparently contends that these limits failed to accommodate Dr. Barner's opinion that his "ability to withstand the stresses and pressures associated with day-to-day work activity" was "impaired" and that "he may have difficulties adjusting and coping with the pressures of a normal work setting over long periods . . . . " (Pl.'s Statement of Errors 3, ECF No. 8. (citing R. at 661).) But Plaintiff does not explain why the included limits are inadequate or cite any case law in support of his contention that they are. Simply asserting that an accommodation is inadequate fails to carry a plaintiff's burden to demonstrate that an ALJ's RFC determination is not supported by substantial evidence.

The Court further notes that limiting how often changes are made to work duties and settings would benefit a person who would otherwise have difficulties adapting to ordinary work situations or changes in a routine work setting. Likewise, a limit to work without production-rate pace would benefit a person who would have difficulties with the stress of meeting quotas. Accordingly, Plaintiff's first contention of error is not well taken.

8

**B.      Subjective Symptom Assessment**

Plaintiff also challenges the ALJ's characterization of his mental health treatment as conservative, which was part of the ALJ's assessment of Plaintiff's subjective symptoms. (Pl.'s Statement of Errors 3, ECF No. 8.) Again, the Court finds no reversible error.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at \*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources, including medical opinions. *Id.* In addition, SSR 16-3p[5] sets forth factors that an ALJ will

---

[5] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at \* 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

9

consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all these factors the ALJ should show that he or she considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

Of note, an ALJ will consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at *9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he or she both considers and explains the plaintiff's possible reasons for that failure. *Id*. at *10; *Dooley,* 656 F. App'x at 119 (6th Cir. 2016) (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

An ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16-3p, 2017 WL 5180304 at, *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and

any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

*Id.* at \*10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a

claimant's testimony as incredible, he must clearly state his reason for doing so.").

Here, the Court finds no reversible error in the ALJ's subjective symptom assessment.

The ALJ began by setting forth the two-part process described above. (R. at 18.) The ALJ then

summarized Plaintiff's subjective symptoms at length, writing as follows.

> The claimant alleges limitations resulting from bipolar, schizophrenia disorder, bacterial endocarditis, pulmonary embolism, hepatitis, back problems, anxiety, and hypertension that he states restrict his ability to work. His representative stated that the monthly injections the claimant received to prevented hearing voices put him in a state where he was not able to do much. The claimant testified that he lived in a home with his parents and younger brother, and he did not have a valid driver's license so someone he lived with would drive him places. He said he was unable to work because he had difficulty communicating and difficulty concentrating. He reported medication side effects of clumsiness, unsteadiness, difficulty sleeping, drooling, inability to sit still, weight gain, headaches, lack of coordination, memory loss, acid reflux, loss of strength, muscle jerking, restlessness, eyelid spasms, and nervousness. He went to the grocery store once each week with his mom but would feel overwhelmed at times due to anxiety being around others. He said he could understand what he was watching on television while he was watching it but had difficulty remembering the next day what he had watched. He attended counselling once every couple of weeks and had panic attacks when he had to communicate. He said these lasted for 30-60 minutes and occurred "every once in a while". He said he was able to bathe and dress himself and could lift 20-25 pounds. He said he walked about one mile each day and spent his time taking the dog for a walk and spending time with his parents. He said he had difficulty cooking because he had difficulty focusing on recipes and he was forgetful. He helped his mother once a week with cleaning and chores and did a load of laundry every morning. He said he had not heard any voices since he had started on his current medications, and he did not have anger outbursts. He took medications to help him sleep and received an Invega Sustenna injection once each month. He reported extreme difficulty reading a book due to memory problems. He said he had back and neck pain that travelled and said he could only mow half of the yard at one time. He did not have many friends but talked to immediate family members. (Hearing testimony).

(R. at 17–18.) The ALJ additionally summarized testimony from Plaintiff's mother about his

symptoms. (*Id*. at 18.)

The ALJ then determined that he could not fully credit Plaintiff's subjective symptoms writing as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The onset, nature, intensity, and duration of symptoms, as well as participating and aggravating factors, have all been factored into the residual functional capacity assessment set forth herein for this claimant. (SSR 16-3p). The undersigned has found that the claimant's allegations are not generally consistent with the entire record. Furthermore, the record does not corroborate the claimant's allegations of symptom severity, and the record has multiple conflicting statements regarding the severity of the claimant's activities of daily living. The claimant's allegations that he cannot work is inconsistent with the fact that he can perform a variety of daily tasks, such as walking independently in the community, preparing simple meals, caring for a pet, completing household chores, and performing personal care tasks. (Exhibits 3E, 7F, and Hearing testimony).
>
> Furthermore, the claimant's treatment records indicate that after he remained compliant with medications in 2022, he has only received conservative mental health treatment, which has consisted of medication administration and monitoring. (Exhibits 4F, 6F, 7F, 11F, 13F, 22F, and 24F). He has not had any intensive treatment, such as inpatient hospitalizations. In fact, the record reflects that except for the occasional medication change, his treatment has been overall consistent. (Id.). In addition, although the claimant listed several side effects from medications, he routinely reported he had no side effects to medications at appointments. (Exhibits 6F, 15F, 22F, and 24F). Therefore, this level of conservative treatment is generally not consistent with the severity of symptoms the claimant had alleged for this period.

(*Id*. at 18–19.)

As this discussion demonstrates, the ALJ determined that Plaintiff's statements about the disabling nature of his symptoms were unpersuasive for several reasons including that they were inconsistent with Plaintiff's activities of daily living. Daily activity was a proper factor to consider under SSR 16-3p. 2017 WL 5180304, at *7. *See also Turner v. Comm'r of Soc. Sec.*, No. 20-6422, 2021 WL 6275633, at *3 (6th Cir. Sept. 24, 2021) (citing *Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. Oct. 15, 1997) (("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.")).

The ALJ's consideration of Plaintiff's daily activities was also supported by substantial evidence. The ALJ observed that Plaintiff engaged in a variety of daily activities including household chores, walking in the community independently, pet care, and grooming. (R. at 18.) Substantial evidence supports those observation. During his consultative examination, Plaintiff reported that he could do laundry and household chores. (*Id*. at 658.) He also testified that he did laundry every morning and helped his mother with cleaning and chores every Friday. (*Id*. at 44.) Plaintiff's mother testified that those weekly cleaning sessions consisted of dusting and mopping and that Plaintiff did the dishes after nightly dinners, ran a sweeper a few times a week, and helped her with lawn work. (*Id*. at 50–51.) She further testified that Plaintiff could grill and had prepared a simple breakfast recently. (*Id*. at 52.) Plaintiff also testified that he took his dog for daily walks and that he walked about a mile every day. (*Id*. at 43.) During his consultative examination, Plaintiff reported that he could bathe, dress, and groom himself. (*Id*. at 658.) Plaintiff also testified that he was able to do personal care on his own. (*Id*. at 43.)

The ALJ also determined that Plaintiff's statements about the disabling nature of his symptoms were unpersuasive because his mental health treatment was conservative after he became medication compliant in 2022. (*Id*. at 18.) Conservative treatment was a proper factor to consider under SSR 16-3p. 2017 WL 5180304, at *8. *See also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or conservative treatment for allegedly disabling impairments supported ALJ's assessment); *McKenzie v. Comm'r of Soc. Sec.,* 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (finding ALJ did not err when

13

discounting plaintiff's subjective allegations because, in part, plaintiff's "complaints of disabling pain [were] undermined by his non aggressive treatment.").

The ALJ's consideration of Plaintiff's conservative treatment was also supported by substantial evidence. The ALJ noted that Plaintiff remained complaint with his medications after 2022. (*Id.*) The ALJ further noted that since then, Plaintiff's care consisted of medication management and did not include intensive treatment such as inpatient hospitalization. (*Id.*) That fairly describes the records which generally show that after a three-month hospitalization in 2022, Plaintiff's mental health was treated with medications, and he was not hospitalized again.

Plaintiff nevertheless challenges the ALJ's characterization of his treatment as conservative in two ways. First, he contends that the ALJ wrongly noted his lack of hospitalizations given that he had been hospitalized for psychosis. (Pl.'s Statement of Errors 3, ECF No. 8.) But the hospitalization to which Plaintiff refers occurred in 2022. (*Id.* (citing 429–57).) And the ALJ clearly characterized Plaintiff's post-2022 care as conservative. (R. at 18.) Moreover, the ALJ's discussion of the evidence included an explicit reference to Plaintiff's 2022 hospitalization. The ALJ wrote as follows:

> From September 2022 through November 2022 the claimant was hospitalized due to mania and psychosis and drug abuse. (Exhibit 4F). In December 2022 the claimant moved to Ohio and reported medications were not helping and anxiety was 10/10 but depression was controlled. (Exhibit 6F/3). He denied hallucinations and suicidal ideations and denied numbness and tingling in his extremities. He said he slept 8 hours each night. (Id.). At later follow-up visits the claimant reported no side effects to medications, denied hallucinations, and described his mood as stable. (6F/9, 19, 23, 26, 35).

(R. at 19.) Plaintiff does not challenge this discussion of the record evidence. The Court, therefore, is not convinced that the ALJ wrongly characterized Plaintiff's care as conservative because he overlooked Plaintiff's 2022 hospitalization.

14

Plaintiff next challenges the ALJ's characterization of his mental health treatment as conservative because he receives monthly anti-psychotic injections that impact his short-term memory and ability to function. (Pl.'s Statement of Errors 3, ECF No. 8.) But the ALJ discussed Plaintiff's monthly Invega injections throughout the determination as well as any potential side effects. Indeed, the ALJ expressly acknowledged that Plaintiff "reported medication side effects of clumsiness, unsteadiness, difficulty sleeping, drooling, inability to sit still, weight gain, headaches, lack of coordination, memory loss, acid reflux, loss of strength, muscle jerking, restlessness, eyelid spasms, and nervousness." (R. at 17.)

But the ALJ also explained that Plaintiff routinely reported that he had no side effects during his appointments. (*Id*. at 19, 20.) Substantial evidence supports that explanation. In January 2023, Plaintiff denied side effects to a provider. (*Id*. at 586.) Later that month, a provider reviewed medication side effects with Plaintiff who reported no changes. (*Id*. at 590.) In February 2023, Plaintiff denied any problematic medication side effects that needed to be addressed and reported no change when side effects were reviewed again later that month. (*Id*. at 593, 602.) Plaintiff again denied any problematic side effects that needed addressed in August 2023. (*Id*. at 974.) Similarly, in April and May 2024, Plaintiff reported that his medications were effective, and he denied any concerns about them. (*Id*. at 1129, 1136.) At another appointment in April 2024, he expressly denied medication side effects. (*Id*. at 1133.) Thus, it is clear that the ALJ considered and weighed conflicting information about Plaintiff's medication side effects when assessing his subjective symptoms.

In sum, the ALJ provided a detailed and supported explanation for his subjective symptom assessment, including that Plaintiff's care was conservative. Plaintiff's second contention of error is, therefore, not well taken.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's non-disability determination

and **OVERRULES** Plaintiff's Statement of Errors.


**IT IS SO ORDERED.**


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE